O
JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

EUGENE FRIDMAN, EDWARD
RAECEK, BRIAN M. DROMGOOLE,
RONNIE KEHATI, and JOSEPH V.
ESPOSITO, on behalf of themselves and
others similarly situated,

                Plaintiffs,

     v.

BALLY TOTAL FITNESS HOLDING
CORP. and L.A. FITNESS
INTERNATIONAL, LLC,

                Defendants.

Case No. 2:12-cv-707-ODW(MRWx)

**ORDER DISMISSING CASE**

Upon sua sponte review of Plaintiffs' Complaint, the Court finds that it lacks subject-matter jurisdiction and must dismiss the case.  Fed. R. Civ. P. 12(h)(3).

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress.  *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Subject-matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship.  28 U.S.C. §§ 1331, 1332.  In this case, Plaintiffs solely allege diversity jurisdiction and brings no federal causes of action.

Diversity jurisdiction exists for all suits, including class-action suits, where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs," and is between parties with diverse citizenship.  28 U.S.C. § 1332(a).  But multiple plaintiffs may not aggregate their claims against defendants—to reach the $75,000 threshold—unless they have a single title or right in a common and undivided interest.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 943–44 (9th Cir. 2001).

Alternatively, plaintiffs may establish diversity jurisdiction under the Class Action Fairness Act ("CAFA").  Under CAFA, diversity jurisdiction exists in "mass action" suits so long as the following requirements are met: (1) 100 or more plaintiffs; (2) common questions of law or fact between plaintiffs' claims; (3) minimal diversity, where at least one plaintiff is diverse from one defendant; (4) aggregated claims in excess of $5 million; and (5) at least one plaintiff's claim exceeding $75,000.  28 U.S.C. § 1332(d); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 689 (9th Cir. 2006).

In this class action, Plaintiffs properly allege complete diversity under § 1332(a), but fail to allege that the amount in controversy (per Plaintiff) exceeds $75,000.[1]  Plaintiffs state that the aggregate amount in controversy "exceeds $5 million."  (Compl. ¶ 1.)  But this does not suffice—individual Plaintiffs still must show that their claims exceed $75,000.  *Gibson*, 261 F.3d at 943–44.  In situations like this where plaintiffs do not state specific, individual amounts in damages, the Court determines under the preponderance-of-evidence standard whether the jurisdictional amount is satisfied.  *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998 (9th Cir. 2007).

Examining the Complaint, the Court finds no evidence suggesting that any class member would be entitled to more than $75,000 in damages.  Plaintiffs bring this class-action suit for breach of contract and consumer fraud because Defendants no longer honor their "lifetime" and long-term gym memberships.  (Compl. ¶¶ 97, 109.)  Plaintiffs mention the costs they paid to acquire these memberships.[2]  But none of

---

[1] Plaintiffs are citizens of Arizona, Florida, New Jersey, New York, and Pennsylvania.  Defendants are citizens of California and Illinois.  (Compl. ¶¶ 10–16.)

[2] Fridman acquired his lifetime membership as a gift, and is required to pay a $17.32 monthly maintenance fee for the membership; Raecek's lifetime membership cost "approximately $1,000,"

these costs come close to $75,000.  Further, the Complaint fails to state—and rightly so—that Plaintiffs have individually suffered damages in excess of $75,000; the Court sees no reason how they could.  Based on Plaintiffs' allegations, the Court finds that no class member's claim—not just under a preponderance, but with legal certainty—could possibly exceed $75,000.  Accordingly, as a regular class-action suit, there is no diversity jurisdiction here under § 1332(a).

But Plaintiffs also allege that this is a CAFA mass action under § 1332(d), because it involves more than 100 plaintiffs and over $5 million in aggregated damages.  (Compl. ¶ 1.)  Plaintiffs also satisfy the minimal-diversity requirement. (Compl. ¶¶ 10–16.)

Yet, under Ninth Circuit law, individual plaintiffs must still meet the $75,000 amount-in-controversy requirement in a CAFA mass action: "'*jurisdiction* shall *exist* only over those plaintiffs whose claims in a mass action satisfy the [in excess of $75,000] jurisdictional amount.'"  *Abrego*, 443 F.3d at 687 (alteration in original) (citing 28 U.S.C. § 1332(d)(11)(B)(i)).  While it is unclear whether each individual plaintiff in a mass action has to meet the $75,000 amount-in-controversy requirement, it is clear that at least one plaintiff must meet that requirement.  *Id.* at 689 ("We do conclude . . . that the case cannot go forward unless there is *at least* one plaintiff whose claims can remain in federal court.").

To be clear, the Court is unaware of any binding authority that applies the $75,000 amount-in-controversy requirement to plaintiffs in a mass action originating in federal court, as opposed to on removal.  *Abrego* and its progeny deal only with cases removed from state court—it may be argued that the curious CAFA statute should be construed to mean that the $75,000 amount-in-controversy requirement

---

and he must pay an annual maintenance fee of $25.51; Dromgoole paid "approximately $1,300" for his lifetime membership, and paid a $100 fee to transfer his "home club"; Kehati's lifetime membership cost "approximately $2,500," and he must pay $30 per year in maintenance fees; Esposito paid "approximately $559" for his lifetime membership, and must pay a $60 annual maintenance fee.  (Compl. ¶¶ 42–43, 52–53, 59–62, 68–69, 76–77.)

applies only to cases removed from state court, and not to cases originally filed in federal court. 28 U.S.C. § 1332(d)(11)(A) ("For purposes of this subsection . . . a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs.").

But this Court finds it illogical that the amount-in-controversy requirement for removal would be different (and more strict) than for a case originating in federal court. The Court is aware of one Court of Appeals case that makes the same conclusion, holding that the $75,000 amount-in-controversy requirement equally applies to actions removed from state court and actions originally filed in federal court. *Cappuccitti v. DirecTV, Inc.*, 611 F.3d 1252, 1256–57 (11th Cir. 2010.) But the Eleventh Circuit later vacated this opinion and held that there is no $75,000 requirement for CAFA diversity jurisdiction—for cases removed from state court and cases originating in federal court. *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 (11th Cir. 2010).

The Ninth Circuit, however, has maintained its $75,000 amount-in-controversy requirement in *Abrego*, but has not explicitly held that this requirement also applies to actions originating in federal court. Nevertheless, it is this Court's position that so long as the Ninth Circuit's *Abrego* opinion stands, it is bound to follow the $75,000 amount-in-controversy requirement, both for cases removed from state court and cases originating in federal court.

Therefore, this case is hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

September 25, 2012

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

4